UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
JOSE QUEZADA,                           :
                          Plaintiff,    :
                                        :     09 Civ. 2832 (DLC)
            -v-                         :
                                        :     OPINION & ORDER
ROBERT ERCOLE, et al.,                  :
                          Defendants.   :
                                        :
--------------------------------------- X

Appearances:

For Plaintiff:
Jose Quezada, pro se
04-A-3690
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589

For Defendants:
Frederick Hongyee Wen
Office of the Attorney General of the State of New York
120 Broadway
New York, NY 10271

DENISE COTE, District Judge:

     Jose Quezada ("Quezada"), proceeding pro se, brings this

action pursuant to 42 U.S.C. § 1983 against twenty-one New York

State Department of Correctional Services ("DOCS") officers,

including Robert Ercole, the former superintendent at Green

Haven Correctional Facility ("Green Haven"), and Robert

Cunningham, Green Haven's former deputy superintendent, in

addition to the Green Haven facility itself.  Quezada alleges

that while he was incarcerated at Green Haven, the defendants

violated his constitutional rights by retaliating against him for filing grievances and by acting with deliberate indifference to his medical needs in violation of the Eighth Amendment. Quezada further alleges that the defendants failed to provide accommodations for his hearing impairment.  The defendants have moved for summary judgment.  For the following reasons, the motion is granted in part.

BACKGROUND

Except where noted, the following facts are undisputed. Quezada was incarcerated at Green Haven, the site of the alleged abuses, from April 11, 2005 through the filing of his complaint. Quezada's claims fall into three categories:  the retaliation against him for filing grievances and a civil suit; the deliberate indifference to his medical needs; and the failure to accommodate his hearing impairment.

I.  Retaliation

Quezada alleges that in April and May of 2006, officer Amy Savino ("Savino") refused to allow him access to Green Haven's law library in retaliation for the filing of a § 1983 suit in the United States District Court for the Western District of New

York.[1]  On May 12, 2006, Quezada filed a grievance against
Savino.  In a written response to Quezada's grievance, Savino
acknowledged that she had insisted on inspecting Quezada's
outgoing legal mail for contraband, but denied that she had
prohibited his access to the library or otherwise threatened
him.  Savino was mistaken about the Green Haven policy governing
inspection of inmate correspondence; Quezada's outgoing legal
correspondence did not need to be inspected.

Quezada alleges in his complaint that this first
confrontation with Savino and the filing of a grievance against
her triggered a host of retaliatory actions by Savino and other
Green Haven corrections officers against Quezada.  Quezada filed
a total of 28 grievances concerning the alleged retaliatory
actions, spanning a two-year period.  The substance of those
grievances is detailed here.

On May 30, 2006, Quezada was rebuked by both Savino and an
officer Martin, who is not named in the complaint, for traveling
to another building in the facility without permission.  Martin
later apologized to Quezada after learning that another officer
had authorized Quezada to travel to the other building.  On June

---

[1] Quezada filed a complaint on April 6, 2006 in the Western
District of New York detailing alleged abuses committed by the
superintendent and corrections officers at Five Points
Correctional Facility, where Quezada was incarcerated before he
was transferred to Green Haven.  That case is ongoing.  See
Quezada v. Poole et al., No. 06 Civ. 228 (WMS) (W.D.N.Y. filed
Apr. 6, 2006).

20, 2006, Quezada filed a grievance complaining of the May 30 incident; Quezada alleged that Martin subjected him to a pat down and threatened him, stating that if Quezada was out of place again, Martin would "break you[sic] legs you piece of shit."

Quezada filed at least two grievances relating to alleged sexual harassment and assault by Green Haven officers.  Quezada was issued a Misbehavior Report on August 28, 2006 by officer Richard Hope ("Hope") for possession of chewing tobacco and a pair of boots with metal spikes.  Quezada subsequently filed a grievance on September 22, 2006 against Hope, Jeffrey MacIsaac ("MacIsaac"), and Anthony Cefaloni, claiming that on August 28, 2006, they subjected him to a sexually abusive pat down in retaliation for his prior grievances.  Quezada alleged that, in the course of the pat down, the officers "started running the wand on my private parts" and that they "squeezed" his genitals with the hand-held metal detector.  When Quezada objected, the officers responded that he could "file a lawsuit" against them if he wanted to.  Quezada interpreted this statement as a taunt; it demonstrated that the officers knew that no one would intervene to stop the pat down.

The other alleged assault involved an incident in Green Haven's law library on September 29, 2006.  Quezada alleges that he was using the law library when Hope, Macisaac, John Serrell

4

("Serrell"), and Robert Clerc ("Clerc") slammed his face against the wall during a pat down.  Quezada requested medical attention and was seen by a nurse.  In his grievance of October 5, 2006, Quezada claimed that the officers had broken his nose; medical records reveal that there was no sign of damage or bleeding when the nurse inspected his face immediately following the incident. An x-ray of Quezada's head performed on October 2 revealed an undisplaced hairline fracture of the nose.  The medical officer on duty, Dr. Hari Charkravorty ("Charkravorty"), noted that the hairline fracture was most likely caused by a trauma to the nose that occurred closer in time to the October 2 x-ray than the September 29 incident in the law library.

Quezada also filed grievances relating to his service on the Inmate Liason Committee ("ILC") and the inspection of his legal mail.  On February 8, 2007, Quezada was prevented from leaving his cell to serve as a representative on the ILC by Hope and officer Christina Bass ("Bass") due to lack of security staff.  Green Haven policy dictated that inmates were only permitted to attend ILC meetings when officers were available to escort them from their cells to the meeting place.  Quezada later challenged his removal from the ILC because of disciplinary problems by grievance of June 15, 2007.

Finally, Quezada identified at least one further instance, following the incident with Savino in 2006, where his legal mail

was handled contrary to Green Haven policy.  On July 20, 2007, Quezada's legal mail was inadvertently opened outside of his presence, contrary to Green Haven policy, and he subsequently filed a grievance.

II.  Helicobacter Pylori Infection

Quezada alleges that Green Haven's water supply is contaminated with the bacteria Helicobacter pylori ("H. pylori") and that the defendants refused to correct the problem.  As a result, Quezada contends that he became infected with the H. pylori bacteria and was provided with inadequate medical care.

H. pylori is a type of coliform bacteria which originates in animal intestines.  DOCS contracts with a private firm to test the water supply at Green Haven three times a month for the presence of coliform bacteria.  Testing is performed on both the "raw," or untreated, water samples, in addition to the drinking water available to both inmates and staff at Green Haven.  Test results for the years 2007, 2008, and 2009 demonstrate that coliform bacteria was not detected in the post-treatment water supply at Green Haven during that time.

Quezada complained of stomach pain and was seen by medical officer Charkravorty on October 31, 2008.  On December 4, 2008, Charkravorty informed Quezada that tests performed during the October 31 visit had come back positive for H. pylori infection.

6

Quezada refused treatment and left Charkravorty's office.   In his grievance filed on December 21, 2008, Quezada acknowledges that he refused treatment because he had "a conflict of interest" with Charkravorty; Quezada asked to be treated by a different doctor, but this request was denied.   Quezada filed two grievances alleging that he had received inadequate care for his H. pylori infection on December 21 and 29, 2008, respectively.

III.   Hearing Impairment

Quezada also claims that the defendants refused to accommodate his hearing impairment.   He contends that he was denied the use of a special alarm clock for the hearing-impaired.   Quezada further alleges that he requested that the officers knock on the bars of his cell so that he would be alerted to various deadlines, and that the officers refused. Quezada does not allege that he filed any grievances with respect to these claims, and DOCS does not have any record of grievances relating to these claims.

IV.   Procedural History

Quezada filed the complaint in this action on March 25, 2009.  The complaint asserts claims against all defendants for retaliation and deliberate indifference to Quezada's medical

needs in violation of his constitutional rights pursuant to 42
U.S.C. § 1983.  The complaint also asserts violations of Title
II of the Americans with Disabilities Act of 1990 ("ADA"), 42
U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation
Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794.  By
Order of November 12, 2009, this case was referred to Magistrate
Judge Katz for general pretrial supervision.

On January 16, 2011, the defendants filed a motion for
summary judgment pursuant to Rule 56, Fed. R. Civ. P.  Quezada
submitted four requests for extensions of time to submit his
opposition to the defendants' motion, on February 1, February
24, March 30, and May 2, respectively; Judge Katz granted each
of these requests.  In his endorsement of May 2, Judge Katz
granted Quezada's fourth request for an extension but specified
that there would be no further extensions.  On May 16, Quezada
submitted his fifth request for an extension.  By Order of June
7, Judge Katz denied the request for a fifth extension, noting
that Quezada had had five months to respond to the defendants'
motion and had failed to do so.  Accordingly, Judge Katz deemed
the motion for summary judgment fully submitted.  In lieu of any
opposition by Quezada to the motion for summary judgment, this
Court has construed each of Quezada's statements in the
complaint in this action and in his grievances as if they had

been reasserted by Quezada in an affidavit in opposition to the summary judgment motion.


DISCUSSION

The defendants argue that they are entitled to summary judgment because Quezada failed to exhaust his ADA, Rehabilitation Act, and deliberate indifference claims; because Quezada fails to state § 1983 claims for retaliation or deliberate indifference; and because they are entitled to qualified immunity.  The defendants further argue that the claims against the supervisory defendants should be dismissed for lack of personal involvement.

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party.  Roe v. City of Waterbury, 542 F.3d 31, 35-36 (2d Cir. 2008).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts

showing that there is a genuine issue for trial," and cannot
rest on the "mere allegations or denials" contained in the
pleadings.  Fed. R. Civ. P. 56(e); Wright v. Goord, 554 F.3d
255, 266 (2d Cir. 2009).  That is, the nonmoving party "must do
more than simply show that there is some metaphysical doubt as
to the material facts." Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 586 (1986).  Only disputes over
material facts -- facts that might affect the outcome of the
suit under the governing law -- will properly preclude the entry
of summary judgment.  SCR Joint Venture, 559 F.3d at 137.  "It
is well established that the submissions of a pro se litigant
must be construed liberally and interpreted to raise the
strongest arguments that they suggest." Triestman v. Fed. Bur.
of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)
(citation omitted).  The rule favoring liberal construction of
pro se submissions is especially applicable to civil rights
claims.  See Weixel v. Bd. of Ed. of the City of New York, 287
F.3d 138, 146 (2d Cir. 2002).


I.  Disability Claims

    Quezada alleges that while he was in custody at Green
Haven, he requested several accommodations for his hearing
impairment, including a "shake awake" alarm clock, and the
defendants refused to accommodate his disability in violation of

the ADA and the Rehabilitation Act.  The defendants argue that Quezada has failed to exhaust these claims.

The Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e et seq., requires a prisoner to exhaust all available administrative remedies before he can bring a civil rights action pursuant to 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2006).  "[F]ailure to exhaust is an affirmative defense under the PLRA."  Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009).  "Exhaustion is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes."  Hernandez, 582 F.3d at 305 (citation omitted).  "[R]etaliation claims fit within the category of inmate suits about prison life, and therefore must be preceded by the exhaustion of state administrative remedies available." Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (citation omitted).  DOCS' Inmate Grievance Program ("IGP") "has a regular three-tiered process for adjudicating inmate complaints:  (1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"), (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Officer Review

Committee ("CORC")." Espinal v. Goord, 554 F.3d 216, 224 (2d Cir. 2009).

Quezada has failed to exhaust his disability claims under the ADA and the Rehabilitation Act. Quezada does not allege that he filed grievances with the IGRC regarding these claims, and DOCS has no record of such a grievance having been filed. Moreover, Quezada has not demonstrated that his failure to exhaust the prison grievance system should be excused. Accordingly, Quezada's ADA and Rehabilitation Act claims are dismissed for failure to exhaust.

III.  Retaliation

"To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (citation omitted). The First Amendment protects prisoners from retaliation for filing grievances. See Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003); Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or

her constitutional rights constitutes an adverse action for a claim of retaliation." Davis, 320 F.3d at 353 (citation omitted). "Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." Id. (citation omitted). "In making this determination, the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." Id. "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004).

    With one exception, Quezada has failed to demonstrate that adverse action sufficient to prevail on a claim of retaliation was taken against him. Quezada has identified several instances where the defendants acted contrary to Green Haven policy:  they opened his legal mail outside of his presence; they inspected his outgoing legal mail for contraband; and they rebuked him for travelling to another building within the facility when he had obtained permission to go to that building.  None of these acts rises to the level of retaliatory action protected under the Constitution.  While contrary to Green Haven policy, these acts

13

would not deter "an individual of ordinary firmness" from filing
a grievance.  Quezada has not introduced any evidence showing
that the defendants' treatment of him in this regard differed
from the treatment of other inmates at Green Haven.

Quezada has also failed to carry his evidentiary burden of
showing that his claim of sexual harassment could succeed at
trial.  The sexual assault took place during a prison pat down.
Because Quezada had recently been apprehended with contraband on
his person, the officers were warranted in engaging in a very
thorough pat down of Quezada's person.  In this context, Quezada
has not shown that the force applied to his genitals was
excessive.  Indeed, Quezada appears to have objected to the mere
use of the hand-held metal detector near his genitals.  While
not necessary to this finding, it is worth noting that Quezada
has not produced any witnesses or medical records corroborating
his claims of sexual assault.  Moreover, Quezada filed his
grievance complaining of sexual assault after he was issued a
Misbehavior Report, supporting the defendants' argument that in
filing the grievance Quezada was seeking to retaliate against
the officers for punishing him.

Quezada has carried his burden of showing a genuine issue
of fact with regard to the assault in the law library by
defendants Hope, Macisaac, Serrell, and Clerc.  While the
defendants are correct that medical records from September 29,

14

2006, the day Quezada alleges he was assaulted by the defendants in Green Haven's law library, reveal that he had no signs of bleeding or bruising immediately following the incident, an x-ray performed shortly afterwards on October 2 revealed a hairline fracture of Quezada's nose.  This medical evidence is sufficient to defeat the defendants' motion for summary judgment on this issue.

Hope, Macisaac, Serrell, and Clerc argue that they are entitled to qualified immunity from Quezada's retaliation claim. "Under qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Faghri v. Univ. of Conn., 621 F.3d 92, 96 (2d Cir. 2010) (citation omitted).  A right is "clearly established if it would be clear to a reasonable officer in the position of the defendant that his conduct was unlawful in the situation he confronted."  Id. at 96-97 (citation omitted).  This inquiry, in turn, hinges on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  Id. at 97 (citation omitted).

It was clearly established in 2006 that officers could not assault an inmate by slamming his head into the wall in

retaliation for the filing of grievances.  Accordingly,

Quezada's retaliation claims are dismissed with the exception of

the assault claim against Hope, Macisaac, Serrell, and Clerc.


IV.  Deliberate Indifference

Although the Eighth Amendment imposes a duty upon prison

officials to ensure that inmates receive adequate medical care,

it is well-established that "not every lapse in medical care is

a constitutional wrong."  Salahuddin v. Goord, 467 F.3d 263, 279

(2d Cir. 2006) (citation omitted).  Rather, a prison official is

held to have violated the Eighth Amendment only when the alleged

deprivation is shown to be "sufficiently serious" and the

prisoner demonstrates that the charged official acted "with a

sufficiently culpable state of mind."  Id. at 279-80 (citation

omitted).

To determine whether a deprivation of medical care is

"sufficiently serious," a court must first ask "whether the

prisoner was actually deprived of adequate medical care."  Id.

"As the Supreme Court has noted, the prison official's duty is

only to provide reasonable care."  Id. (citing Farmer, 511 U.S.

at 844-47).  An inmate is not entitled to treatment by every

available medical alternative as long as his treatment is

reasonable.  Estelle v. Gamble, 429 U.S. 97, 107 (1976).

Furthermore, a "mere disagreement over the proper treatment does

16

not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

A court must also inquire as to "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin, 467 F.3d at 280 (citation omitted).  If the inadequacy at issue is "a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's [underlying] medical condition is sufficiently serious." Id.  If, however, "the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." Id.  Then, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).  Even in cases where an inmate "suffers from an admittedly serious medical condition," if the alleged deficiencies in treatment are "minor and inconsequential," those lapses will not sustain an Eighth Amendment claim. Id.  "[T]he actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the

17

denial of treatment subjected the prisoner to a significant risk of serious harm." Id. at 187.

The second requirement for an Eighth Amendment violation is subjective:  the prison official must act with a "sufficiently culpable state of mind." Salahuddin, 467 F.3d at 280 (citation omitted); see also Caiozzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009).  "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." Salahuddin, 467 F.3d at 280 (citation omitted).  "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. (citation omitted).  This means that the prison official "must be subjectively aware that his conduct creates such a risk."  Id. at 281 (citation omitted).

Quezada has failed to show either that the defendants were deliberately indifferent to his health by failing to cure a contamination problem with the drinking supply, or that he was deprived of medical care for his H. pylori infection.[2]  Quezada

---

[2]  The defendants argue that Quezada only exhausted his deliberate indifference claims relating to the H. pylori infection after the filing of the complaint in this case. Quezada's complaint was filed on March 25, 2009.  Quezada filed two separate grievances with the IGRC relating to his medical treatment for the H. pylori infection; both of these claims were appealed to the CORC and denied by that body on February 25, 2009, prior to the filing of the complaint.  Therefore, Quezada's deliberate indifference claims have been properly exhausted.

claims that the drinking water at Green Haven is contaminated with the H. pylori infection and that the defendants did nothing to address the contamination, but tests of the treated water supply during the years 2007, 2008, and 2009 reveal no traces of coliform bacteria, including H. pylori bacteria.  Further, Quezada acknowledges that he was seen by Charkravorty and that Charkravorty prescribed a course of treatment for his infection, but that Quezada refused to be treated by Charkravorty due to a "conflict of interest."  As noted above, it is well settled that a prisoner is only entitled to receive reasonable medical care; he is not entitled to treatment by every available medical alternative.  Thus, Quezada is not entitled to treatment by the doctor of his choice, as long as Charkravorty prescribed a reasonable course of treatment.  Accordingly, Quezada's deliberate indifference claims are denied.


CONCLUSION

     The defendants' January 16, 2011 motion for summary judgment is granted in part.  Quezada's claims for deliberate indifference and his claims under the ADA and Rehabilitation Act are dismissed.  Quezada's retaliation claims are also dismissed, with the exception of the assault claim against Hope, Macisaac,

Serrell, and Clerc.  A scheduling order to follow this Opinion
shall govern the remainder of the proceedings in this case.

    SO ORDERED:

Dated:    New York, New York
        July 29, 2011

                                          DENISE COTE
                       United States District Judge

COPIES SENT TO:

Jose Quezada
04-A-3690
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589

Frederick H. Wen
Assistant Attorney General
State of NY Attorney General's Office
120 Broadway
New York, NY 10271-0332

Magistrate Judge Katz